# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

KENNETH A. WILSON, III,

       Petitioner,

v.                                   Case No. 3:20-cv-217-TJC-MCR

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

# **ORDER**

## I. Status

Petitioner, Kenneth A. Wilson, III, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He is proceeding on an Amended Petition. Doc. 7. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for first degree murder and armed robbery, for which he is serving a life term of incarceration. Id. at 1. Respondents argue that the Petition is untimely filed and request dismissal with prejudice. See Doc. 16 (Resp.).[1] Petitioner filed a Notice advising that he declines to file a reply and

_____

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

relies on his assertions and claims as state in his Amended Petition. Doc. 18.
This case is ripe for review.

## II. One-Year Limitations Period

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)
amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to
> an application for a writ of habeas corpus by a
> person in custody pursuant to the judgment of a
> State court.   The limitation period shall run
> from the latest of--
>
> > (A) the date on which the judgment
> > became final by the conclusion of
> > direct review or the expiration of
> > the time for seeking such review;
> >
> > (B)   the   date   on   which   the
> > impediment to filing an application
> > created by State action in violation
> > of the Constitution or laws of the
> > United States is removed, if the
> > applicant was prevented from filing
> > by such State action;
> >
> > (C)   the   date   on   which   the
> > constitutional right asserted was
> > initially recognized by the Supreme
> > Court, if the right has been newly
> > recognized by the Supreme Court
> > and made retroactively applicable
> > to cases on collateral review; or
> >
> > (D) the date on which the factual
> > predicate   of   the   claim   or   claims

> presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III. Analysis

### *a. Timeliness*

On August 15, 2014, a jury found Petitioner guilty of first degree murder (count one) and armed robbery (count two). Resp. Ex. A at 129-31. On September 25, 2014, the trial court sentenced Petitioner to a life term of incarceration on each count, with the sentence for count two to run concurrent to the sentence for count one. Id. at 179. Petitioner, with help from appellate counsel, sought a direct appeal. Id. at 193. While his appeal was pending, Petitioner filed with the trial court a motion under Florida Rule of Criminal Procedure 3.800(b)(2), seeking to correct an alleged error in the costs assessed at sentencing. Resp. Ex. B at 1-7. Because the trial court did not rule on the Rule 3.800(b)(2) motion within sixty days, the motion was treated as denied under Rule 3.800(b)(2)(B) on May 5, 2015. Id. at 18.

On March 23, 2016, the First District Court of Appeal per curiam affirmed Petitioner's judgment and sentences without a written opinion. Resp. Ex. G. Petitioner timely moved for a written opinion, and the First DCA granted the request. Id. On May 20, 2016, the First DCA issued its written opinion:

> Following our per curiam affirmance of Appellant's convictions and sentences for first-degree murder and robbery while armed with a firearm, Appellant, Kenneth Arthur Wilson, filed a motion pursuant to rule 9.330(a), Florida Rules of Appellate Procedure, requesting a written opinion. We grant the motion, withdraw our previous per curiam affirmance, and substitute the following opinion which also affirms.
>
> Appellant raised two issues in his appeal. In his motion for written opinion he raises only the issue that our affirmance conflicts with Villanueva v. State, 189 So. 3d 982 (Fla. 2d DCA 2016), which found that a probationer's consent to a warrantless search following a traffic stop was not voluntarily given. However, we find Villanueva distinguishable.
>
> In Villanueva the facts were undisputed. Id. at 984. There, the officer testified that Villanueva consented to search because he believed he had no choice since he was on probation, and that misunderstanding by Villanueva was not corrected by the officer. Id. In contrast, here the trial judge had conflicting evidence as to whether the Appellant, who was on probation for another offense, was told he had to accompany law enforcement officers to the Sheriff's office for questioning regarding a murder. The trial judge weighed the evidence and found based on their "demeanor and experience" that "the testimony given by these officers at the suppression hearing [was] more credible than that of the Defendant and his mother."

4

It is well-established "[w]hen ruling on a motion to suppress, it is the responsibility of the trial judge, not the jury, to resolve issues of fact." <u>Jerido v. State</u>, 15 So. 3d 851, 851 (Fla. 1st DCA 2009). As the Florida Supreme Court has stated:

> We recognize and honor the trial court's superior vantage point in assessing the credibility of witnesses and in making findings of fact. The deference that appellate courts afford findings of fact based on competent, substantial evidence is an important principle of appellate review. In many instances, the trial court is in a superior position "to evaluate and weigh the testimony and evidence based upon its observation of the bearing, demeanor, and credibility of the witnesses." <u>Shaw v. Shaw</u>, 334 So. 2d 13, 16 (Fla. 1976). When sitting as the trier of fact, the trial judge has the "superior vantage point to see and hear the witnesses and judge their credibility." <u>Guzman v. State</u>, 721 So. 2d 1155, 1159 (Fla. 1998), cert. denied, 526 U.S. 1102 (1999). Appellate courts do not have this same opportunity.

<u>Stephens v. State</u>, 748 So. 2d 1028, 1034 (Fla.1999).

The trial judge resolved the factual dispute in finding that the Appellant voluntarily accompanied the officers. The trial judge considered the voluntariness of the confession.[FN1] The trial judge then found that the State met its burden and that the totality of the circumstances surrounding the Appellant's confession showed that it was freely and voluntarily given. <u>See</u> <u>Martin v. State</u>, 107 So. 3d 281, 298 (Fla. 2012); <u>State v. Mallory</u>, 670 So. 2d 103 (Fla. 1st DCA 1996).

AFFIRMED.

> [FN1] Appellant did not argue that his confession was invalid for any reason other than his claim that he was required to accompany the officers to the Sheriff's office. Furthermore, it is undisputed, as the trial judge found, that once at the Sheriff's office the Appellant was read "his Constitutional rights line by line and that [Appellant] acknowledged that he understood his rights before making his confession."

Resp. Ex. H; see also Wilson v. State, 191 So. 3d 537, 538-39 (Fla. 1st DCA 2016). Because the First DCA issued a written opinion, Petitioner could have sought discretionary review with the Florida Supreme Court within thirty days of the date the First DCA rendered the opinion. See Fla. R. App. P. 9.120(b); see also Florida Star v. B.J.F., 530 So. 2d 286 (Fla. 1988) (holding that the Florida Supreme Court has subject-matter jurisdiction to review any decision of a district court of appeal that expressly addresses a question of law within the four corners of the opinion, even if the Florida Supreme Court ultimately denies a petition for discretionary review). Petitioner did not seek review with the Florida Supreme Court (Resp. Ex. I), and so Petitioner's judgment and sentences became final when the time to seek that review expired – Monday, June 20, 2016.[2] See Gonzalez v. Thaler, 565 U.S. 134, 137 (2012) ("We hold that, for a state prisoner who does not seek review in a State's highest court, the

---

[2] The thirtieth day fell on Sunday, June 19, 2016, so Petitioner had until Monday, June 20, 2019, to file a petition with the Florida Supreme Court. See Fla. R. Jud. Admin. 2.514(a)(1)(C).

judgment becomes 'final' on the date that the time for seeking such review expires."); <u>Spivey v. Sec'y, Fla. Dep't of Corr.</u>, No. 3:15-cv-23-MMH-JRK, 2019 WL 10749420, at *1 (M.D. Fla. Jan. 29, 2019) (finding that the petitioner's judgment and sentence became final following the expiration of his time to seek discretionary review in the Florida Supreme Court because the First DCA issued a written opinion on his direct appeal).[3] Petitioner's one-year statute of limitations began to run the next day, Tuesday, June 21, 2016, and then expired one year later on Wednesday, June 21, 2017, without Petitioner filing a state postconviction motion that would have tolled his limitations period.

After the expiration of his federal statute of limitations, Petitioner, with help from privately retained counsel, filed with the trial court his first motion

---

[3] The United States Supreme Court reviews "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had." 28 U.S.C. § 1257(a). Unlike the facts in this case, "a district court decision rendered without opinion or citation constitutes a decision from the highest state court empowered to hear the cause, and appeal may be taken directly to the United States Supreme Court." <u>Florida Star</u>, 530 So. 2d at 289 n.3. Because the First DCA affirmed Petitioner's convictions in a written opinion "contain[ing] a statement or citation effectively establishing [the] point of law upon which the decision rest[ed]," the Florida Supreme Court had jurisdiction to review the opinion. <u>See id.</u> at 288. And "[t]he fact that review in the highest court is discretionary is irrelevant; the litigant still must seek such review in order to proceed to the United States Supreme Court." <u>Id.</u> at 289. Petitioner could not have petitioned for review in the United States Supreme Court until the Florida Supreme Court — "the highest court" of the state — either denied review or issued an opinion, and thus Petitioner is not entitled to the extra ninety-day window to determine the date of finality. <u>See, e.g.</u>, <u>Pugh v. Smith</u>, 465 F.3d 1295, 1300 (11th Cir. 2006) (holding that the petitioner was not entitled to the 90-day period in calculating federal habeas statute of limitations because he first did not seek review in the Georgia Supreme Court).

for postconviction relief under Florida Rule of Criminal Procedure 3.850 on July 25, 2017. Resp. Ex. J1 at 2-66. Because there was no time left to toll, however, Petitioner's Rule 3.850 motion did not toll the federal one-year limitations period. See Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating that where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll"); Webster v. Moore, 199 F.3d 1256, 1259 (11th Cir. 2000) ("Under § 2244(d)(2), even 'properly filed' state-court petitions must be 'pending' in order to toll the limitations period. A state-court petition like [the petitioner]'s that is filed following the expiration of the limitations period cannot toll that period because there is no period remaining to be tolled."). Thus, the Petition, filed on March 1, 2020, is untimely filed by over two and a half years.

### b. Equitable Tolling

Petitioner acknowledges that his Petition is untimely but asks the Court to overlook this procedural bar because his failure to meet the one-year deadline stemmed from his postconviction counsel's errors. Doc. 1 at 12-16. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for

equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)). Equitable tolling is an extraordinary remedy that is "'typically applied sparingly.'" Thomas v. Att'y Gen. of Fla., 992 F.3d 1162, 1179 (11th Cir. 2021) (quoting Hunter v. Ferrell, 587 F.3d 1304, 1308 (11th Cir. 2009)).

Petitioner contends he is entitled to equitable tolling because he hired attorney Michael Panella to file his state Rule 3.850 motion and his federal habeas petition but Mr. Panella miscalculated Petitioner's federal statute of limitations. Doc. 1 at 12-17. According to Petitioner, he retained Mr. Panella in "June of 2016," after his judgment and sentence became final, to pursue his collateral relief. Id. at 15. Petitioner argues that he asked Mr. Panella if he could immediately file a federal habeas petition, but Mr. Panella misadvised him that he needed to first file a Rule 3.850 motion and "assured [Petitioner and Petitioner's mother] that though there is a federal time-limitations, it wouldn't accrue until all state post-conviction avenues h[ad] be[en] exhausted." Id. at 15. According to Petitioner, after the trial court denied his Rule 3.850

motion, he asked Mr. Panella if he could skip an appeal of the Rule 3.850 order to pursue his federal relief and Mr. Panella again misadvised Petitioner he must wait until after he appealed. <u>Id.</u> Petitioner states that Mr. Panella repeatedly misadvised him that he had until March 1, 2020, to file a federal habeas petition and on February 29, 2020, Petitioner finally learned that Mr. Panella's assurances and calculations were wrong. <u>Id.</u> at 16.

In support of this argument, Petitioner attaches the declaration of his mother Jodi Chambers Wilson. <u>Id.</u> at 32-34. In her declaration, Ms. Wilson states that "within a few short weeks of when the appellate courts affirmed the conviction," she and her husband retained Mr. Panella to pursue Petitioner's post-conviction relief. <u>Id.</u> at 32. She contends she also asked Mr. Panella to "bypass the state courts" and seek federal relief first but Mr. Panella explained that Petitioner could not do that. <u>Id.</u> She claims that Petitioner often questioned Mr. Panella's representation and advice, but that Mr. Panella consistently maintained that Petitioner's one-year statute of limitations did not begin until his state remedies were exhausted. <u>Id.</u> at 32-33. According to Ms. Wilson, she emailed Mr. Panella on February 26, 2020, about timeliness and he responded that Petitioner's 2254 petition was due on March 1, 2020. <u>Id.</u> at 33. She claims that a few days later he advised her via telephone that his federal petition was due on March 5, 2020. <u>Id.</u> She states she and Petitioner relied on Mr. Panella's assurances and did not question that it took him over a year to prepare

Petitioner's Rule 3.850 motion. Id. at 33. She states she finally learned that Petitioner's one-year had expired when the "paralegal" who helped Petitioner prepare his 2254 Petition advised her that the Petition was 40 days late. Id.

In consideration of the limited record before the Court, on November 4, 2022, pursuant to Rule 7(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the Court requested Mr. Panella submit an affidavit and relevant documents regarding Petitioner's allegations. See Doc. 19. Mr. Panella submitted his affidavit on December 7, 2022, attesting that Petitioner and Petitioner's family formally retained him to pursue Petitioner's Rule 3.850 proceedings in state court on February 27, 2017; and they then retained him to handle the state appeal of the trial court's order denying the Rule 3.850 motion on February 27, 2019. Doc. 22 at 2-3. According to Mr. Panella, Petitioner did not retain his services to seek federal habeas relief after his state postconviction proceedings concluded. Id. at 3. Mr. Panella explains, however, that during his representation, Petitioner and Petitioner's mother "consistently inquired about [Petitioner's] federal habeas statute of limitations" through written letters and phone calls. Id. According to Mr. Panella, he incorrectly advised Petitioner that, from his research, Petitioner's federal statute of limitations had not expired when he filed his Rule 3.850 motion or when the First DCA resolved Petitioner's appeal of his Rule 3.850 proceedings. Id. at 4. Notably, Mr. Panella explains he misadvised Petitioner that his one-

year did not begin until ninety days after the First DCA affirmed his judgment and sentence on direct appeal and that Petitioner's state collateral proceedings tolled his one-year. <u>Id.</u> at 5-6. Mr. Panella states, "Ultimately, I directly advised [Petitioner] and his mother that he had an additional 60 days for which to file a federal habeas claim that [Petitioner] did not have." <u>Id.</u> at 6.

According to Mr. Panella, during his representation, he regularly communicated with Petitioner and Petitioner's mother, and sometimes communicated with Petitioner's father. <u>Id.</u> at 5. Mr. Panella also attests that even though he was not retained to assist Petitioner with his federal habeas petition, he communicated with Petitioner's mother, as a courtesy, between February and April 2020 about how Petitioner could pursue his federal habeas claims pro se. <u>Id.</u> at 6. Mr. Panella attaches to his affidavit copies of several email exchanges between him and Petitioner's mother. <u>Id.</u> at 8-29. Some emails were sent while Mr. Panella was actively representing Petitioner, in which Mr. Panella updated Petitioner's mother on his progress, advising that he was reviewing Petitioner's case, submitting records requests, conducting research, and drafting outlines of Petitioner's Rule 3.850 motion. <u>Id.</u> at 8, 9. In April 2017, May 2017, and July 2017, Mr. Panella responded to inquiries about Petitioner's one-year limitations period and incorrectly advised that Petitioner was still within his one-year because his limitations period started on August 25, 2016, and explained that he would file the Rule 3.850 motion in time to toll the

limitations period. <u>See</u> <u>id.</u> at 9, 14, 22. Mr. Panella also attaches eleven confirmation letters he sent to Petitioner's prison between 2016 and 2019 scheduling legal phone calls with Petitioner. <u>See</u> <u>id.</u> at 40-50. He explains these eleven letters are the dates for which he has documentation confirming they communicated but clarifies that he spoke to Petitioner by phone over eleven times and regularly communicated with him through written correspondence. <u>Id.</u> at 4.

Mr. Panella also attached email communications between him and Petitioner's mother that occurred after Petitioner's state court collateral proceedings concluded. On February 26, 2020, after the First DCA issued its opinion per curiam affirming the denial of Petitioner's Rule 3.850 motion, Mr. Panella responded to an email from Petitioner's mother, advising that Petitioner needs to file his federal habeas petition in the Middle District of Florida by March 1, 2020. <u>Id.</u> at 30 He also explained that he, at no cost to Petitioner, had "consulted with another law firm that specializes in this issue to [get] a firm answer" about Petitioner's one-year period and expected to hear back from the other law firm soon. <u>Id.</u> at 30. The next day, February 27, 2020, Mr. Panella emailed Petitioner's mother a copy of Petitioner's Rule 3.850 motion, so Petitioner could use the motion to fill out his pro se habeas petition and copies of the approved federal habeas form and motion to proceed <u>in forma pauperis</u>. <u>Id.</u> at 32. Petitioner initiated this action by filing his pro se petition

on March 1, 2020. See Doc. 1. On March 20, 2020, Mr. Panella answered Petitioner's mother's questions about how to e-file documents with the Court, emailed her an "edited" version of the Petition, and advised that he "prepared a supplemental memorandum" that he also included as an attachment to the email. Id. at 36-37. On April 22, 2020, Mr. Panella explained to Petitioner's mother what actions Petitioner needed to take to comply with the Court's March 6, 2020, Order directing Petitioner to pay the filing fee or file an affidavit of indigency (Doc. 2) and the Court's April 16, 2020, Order to Show Cause (Doc. 9). Id. at 39.

Now, Petitioner argues that he should not suffer the consequences of Mr. Panella's misadvice about his federal statute of limitations and asks that the Court address his claims on the merits. See Doc. 1 at 14. As to the first prong of the two-part test for equitable tolling, the Court finds that Petitioner diligently pursued his rights. He repeatedly questioned Mr. Panella about his one-year deadline and maintained that his federal petition needed to be timely filed. See Holland v. Florida, 560 U.S. 631, 653 (2010) ("The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence."). The issue here is whether Petitioner has satisfied the second prong of the two-part test – whether Mr. Panella's miscalculation and incorrect advice constitute an "extraordinary circumstance" warranting equitable tolling.

"[A]n attorney's mistake in calculating the statute of limitations period, even when caused by the failure to do rudimentary legal research, does not justify equitable tolling." Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1221 (11th Cir. 2017) (citing Lawrence, 549 U.S. at 327). Although an attorney's "sincere" and "persistent" misadvice about a petitioner's one-year limitation period may amount to "gross negligence," "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either abandonment of the attorney-client relationship . . . or some other professional misconduct or some other extraordinary circumstance is required." Cadet, 853 F.3d at 1225-27. In determining abandonment, courts consider the fundamental principles underlying agency law. "[T]he agency relationship between an attorney and his client can be severed, with the result that the client is not constructively charged with his attorney's knowledge or actions when, for example, the attorney actually abandons his client or purposely acts adversely to his client's interests or commits another serious breach of loyalty to his client." Id. at 1229 (citations omitted). "[U]nder fundamental tenets of agency law, a principal is not charged with an agent's actions or knowledge when the agent is acting adversely to the principal's interests." Downs v. McNeil, 520 F.3d 1311, 1320 (11th Cir. 2008) (citations omitted). "The reasoning behind the adverse interest exception is that where an agent, though ostensibly acting in the business of

15

the principal, is really committing a fraud for his own benefit, he is acting outside of the scope of his agency, and it would therefore be most unjust to charge the principal with knowledge of it." Cadet, 853 F.3d at 1230 (quotations and citation omitted). This exception is narrow and "applies only where an agent wholly disregards the principal's interests in favor of his own interests or the interests of a third party." Id. at 1231 (citation omitted).

For example, in Holland,

> The Court explained that, while counsel's failure to timely file a § 2254 petition and apparent ignorance of the correct filing deadline "suggest[ed] simple negligence," there were four facts in Holland's case that might lead to the conclusion that counsel's conduct "amounted to more" than negligence: (1) counsel's failure to file the petition on time "despite Holland's many letters that repeatedly emphasized the importance of his doing so"; (2) counsel's failure to "do the research necessary to find out the proper filing date, despite Holland's letters that went so far as to identify the applicable legal rules"; (3) counsel's failure to inform Holland that the Florida Supreme Court had affirmed the denial of his state post-conviction motion, "again despite Holland's many pleas for that information"; and (4) counsel's failure to communicate with Holland during the two-and-a-half year period in which his state motion was pending before the Florida Supreme Court, "despite various pleas from Holland that [counsel] respond to his letters."

Cadet, 853 F.3d at 1223 (quoting Holland, 560 U.S. at 636-38, 652). Holland had also tried to discharge his attorney, complaining to the Florida Supreme Court that there had been "a complete breakdown in communications" and counsel

16

had "abandoned" him, but the state court denied Holland's requests. Holland, 560 U.S. at 637. In Justice Alito's concurring opinion in Holland, he explained that Holland was likely entitled to equitable tolling not because his attorney acted with gross negligence in missing the one-year deadline, but because the attorney effectively abandoned him, "as evidenced by counsel's near-total failure to communicate with petitioner or to respond to petitioner's many inquiries and requests over a period of several years." Holland, 560 U.S. at 659. According to Justice Alito, "[c]ommon sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of the word." Id.; see also Maples v. Thomas, 565 U.S. 266 (2012) (later adopting Justice Alito's view that "under agency principles, a client cannot be charged with acts or omissions of an attorney who has abandoned him.").

Here, Petitioner cites Holland to demonstrate that Mr. Panella not only acted negligent but he, like the attorney in Holland, effectively abandoned Petitioner. Doc. 1 at 14. But the record evidence does not suggest that Mr. Panella's conduct amounted to the "abandonment" contemplated in Holland and Cadet. Mr. Panella's consistent misadvice about Petitioner's filing deadline and his failure to conduct adequate research into the matter likely amounted to gross negligence. Mr. Panella now admits that he should not have waited so long to file Petitioner's Rule 3.850 motion as his delay resulted in the expiration

17

of Petitioner's one-year limitations period without filing a postconviction motion that would have tolled the time. But while Mr. Panella should have learned this much sooner, his late comprehension does not mean that Mr. Panella "was acting to promote his own or a third party's interest at the expense of [Petitioner's] interests." <u>Cadet</u>, 853 F.3d at 1233-34.

To that end, Mr. Panella's error does not mean he abandoned or effectively abandoned Petitioner. There is no evidence that Mr. Panella failed to respond to Petitioner's inquires or keep him informed of developments in his case. He did not desert Petitioner or spend weeks, months, or years failing to communicate with him. And Petitioner did not unsuccessfully request to discharge Mr. Panella as counsel because of any breakdown in communication. Instead, Mr. Panella maintained communication with Petitioner and Petitioner's family throughout Petitioner's state collateral proceeding; and afterwards, he provided meaningful responses to help Petitioner pursue his federal claims pro se. While Petitioner's mother consistently questioned the accuracy of Mr. Panella's advice about Petitioner's one-year and even threatened to hire another attorney because Mr. Panella was taking too long to file Petitioner's Rule 3.850 motion, Mr. Panella always responded to her concerns and repeatedly advised that he cared about Petitioner's case; but also conveyed his understanding that if she felt Petitioner needed to hire another attorney, he would do everything required to smoothly transfer the case to a

new attorney. Doc. 22 at 14. Thus, because Mr. Panella's consistent misadvice about the filing deadline "was [at most] the product of [Mr. Panella's] good faith but negligent or grossly negligent misunderstanding of the law," Petitioner has not shown that Mr. Panella's actions amounted to an "extraordinary circumstance" warranting equitable tolling. See Cadet, 853 F.3d at 1237.

Indeed, this is not the first time this Court has considered a petitioner's argument that their postconviction attorney's misconduct led to the untimely filing of a § 2254 petition. See Thomas v. Att'y Gen. of Fla., No. 3:03-cv-237-J-32PDB, 2018 WL 733631, at *1 (Fla. M.D. Fla. Feb. 6, 2018), aff'd, Thomas, 992 F.3d at 1167. In Thomas, the parties stipulated that postconviction counsel filed petitioner's § 2254 petition nearly a year late "as part of a deliberate strategy to challenge the constitutionality of AEDPA's statute of limitations because [counsel] was interest[ed] in invalidating AEDPA's statute of limitations herself." Id. at *11. This Court, and ultimately the Eleventh Circuit, determined that those facts amounted to the type of rare "extraordinary circumstance" contemplated by both Supreme Court and Eleventh Circuit precedent. Id. at *21. Here, however, unlike counsel in Thomas, Mr. Panella did not abandon his duty of loyalty to Petitioner, so he could promote his own interests or the

19

interests of others. And thus, the Court is obligated to find that this case is untimely filed.[4]

### c. Actual Innocence

Petitioner also tries to overcome the procedural bar by arguing the claims in his Petition and Amended Petition "encompass the actual innocence of Petitioner." Doc. 1 at 16. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to show actual innocence, a petitioner must show "that it is more likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

---

[4] It was cases such as these, where the well-intentioned lawyer gives improper legal advice regarding the federal habeas deadline, that led to the creation of the Capital Habeas Unit in the Middle District of Florida. Here, Petitioner and his family, who retained counsel for collateral review, deserved better.

Here, Petitioner raises three claims for relief. <u>See generally</u> Doc. 7. In Ground One, he argues trial counsel's ineffectiveness contributed to the trial court's denial of his motion to suppress his coerced confession, trial counsel conducted no meaningful pretrial investigation, and trial counsel failed to adequately investigate and cross-examine co-defendant Aaron Nolley. <u>See</u> Doc. 1 at 18-25. In Ground Two, Petitioner asserts that the state committed <u>Giglio</u>[5] and <u>Brady</u>[6] violations when it allowed co-defendant Nolley to present false testimony about the sentence he faced and failed to disclose Nolley's substantial assistance agreement, and that his trial counsel was ineffective for failing to move for a new trial based on this misconduct. <u>Id.</u> at 25-27. And in Ground Three, Petitioner argues that the cumulative effect of trial counsel's errors violated his Sixth Amendment rights. <u>Id.</u> at 28-30.

During his direct appeal, Petitioner challenged the trial court's denial of his pretrial motion to suppress his coerced confession. Resp. Ex. D. The First DCA issued a written opinion affirming Petitioner's judgment and convictions, finding that the trial court did not err in denying Petitioner's motion to suppress. Resp. Ex. H. Petitioner then raised all the current claims before this Court in his Rule 3.850 motion. Resp. Ex. J1 at 2. In a thorough seventy-five-

---

[5] <u>Giglio v. United States</u>, 405 U.S. 150 (1972).

[6] <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).

page order, the trial court summarized all the evidence adduced trial and summarily denied these claims on the merits. See generally id. at 88-162. Petitioner appealed and the First DCA per curiam affirmed the trial court's denial without a written opinion. Resp. Ex. O.

Petitioner now relies on the same issues to support his claim of actual innocence. But he has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not previously available. He has failed to point to any evidence to show it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt because of new evidence. Thus, the Court rejects Petitioner's actual innocence argument. The case is due to be dismissed as untimely.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.    The Amended Petition (Doc. 7) and this case are **DISMISSED with prejudice**.

2.    The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.    If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending

motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[7]

**DONE AND ORDERED** at Jacksonville, Florida, this 20th day of January, 2023.



Timothy J. Corrigan
TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:      Kenneth A. Wilson, III, #J44776
        Counsel of record

---

[7] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.